OPINION OF THE COURT
C. Raymond Radigan, J.
By order dated May 20, 1982 (Meade, J.) the above-entitled motion has been referred to the undersigned for determination.
It appears from the papers presented that Cecilia Romano, on January 27, 1980, died a resident of Suffolk County and letters testamentary issued to Gordon Robert Ellison. The executor, by his attorney, seeks an order, inter alia, directing John R. McNulty, as conservator of Cecilia Romano, to file a final accounting. John R. McNulty and United States Fidelity and Guaranty Company, as surety on the conservator’s bond, resist this motion, denying that respondent McNulty was in fact conservator. The events preceding this application appear unquestioned.
Heretofore and following a hearing an order issued designating John R. McNulty conservator of the property of Cecilia Romano (Meade, J., Aug. 28, 1979). That order directed the filing of a bond in the amount of $46,000 (Mental Hygiene Law, § 77.13) and a designation of the *693 clerk as agent for the service of process (Mental Hygiene Law, § 77.17). Thereafter the named conservator undertook to file a bond by the terms of which he acknowledged he was “duly appointed” as conservator and obligated himself to “faithfully discharge” his office and render “á just and true account” of his stewardship. The acknowledgement appearing upon that undertaking bears the date November 2, 1979 and was approved by the court as to form and suffficiency on November 7, 1979. Respondent McNulty never filed a designation pursuant to section 77.17 of the Mental Hygiene Law, nor did he seek the issuance of a commission from the Suffolk County Clerk. It is therefrom concluded by respondents that Mr. McNulty, although designated as such, never achieved the status of conservator, that he cannot be called upon to account as conservator, nor be exposed to liability by reason of or the failure to properly discharge the duties of that office.This respondent has not denied the allegations of Gerald F. Hoffer that he, McNulty, undertook to collect rents from realty owned by the conservatee.
Irrespective of whether respondent McNulty did or did not collect rents, the court is satisfied that his actions subsequent to his designation are consistent with the acceptance of this trust and the responsibilities which flow therefrom. The filing of the bond and the offer of the promises contained therein was an act which the conservator, the court, and other persons interested in this estate could rely upon for their clear and unambiguous import. That is, that he did accept the stewardship and agreed to faithfully discharge the trust. The actual commission, when and if issued, merely evidences his appointment to third parties and requires no additional assurance of that fact by the conservator to his ward. In fact, article 77 of the Mental Hygiene Law contains no express requirement for the issuance of a conservator’s commission at all, and the practice is only one of accepted procedure. Unlike article 78, which expressly calls for the issuance of a commission to a committee of an incompetent (Mental Hygiene Law, § 78.13), article 77 governing conservatorship matters has no corresponding requirement. Subdivision (d) of section 77.07 of the Mental Hygiene Law speaks only of a “judg *694 ment”, and section 77.19 the “order appointing a conservator”. Once designated, the conservator need only give security prior to entry upon his duties whereupon the conservatorship is treated “as if it were a commission” (Mental Hygiene Law, § 77.13). The filing of a designation for the service of process is not statutorily established as a prerequisite to the effectiveness of the appointment as it is in matters of committees for incompetent persons (Mental Hygiene Law, § 78.13; cf. § 77.17). To the extent that a designated conservator would be expected to file a consent to act with the county clerk prior to the issuance of a commission, this again is a matter of practice and not statute (cf. Mental Hygiene Law, § 78.13) and in any event as to the ward is redundant, restating the acknowledgements contained in the bond. The circumstances might be different had the court dispensed with the requirement for the giving of security (Mental Hygiene Law, § 77.13).
Accordingly the court is satisfied that Mr. McNulty had, by the filing of his bond, accepted and assumed the office of conservator. Upon this finding he is directed to serve and file a final account covering the period from the date of his appointment to the date of the filing thereof. Such account shall be served and filed with 20 days of the date of service of the order to be entered herein.
To the extent that the moving party seeks other affirmative relief, the motion is premature and denied without prejudice to renewal thereof upon the proceedings to settle the final account.
Finally, the court notes that it has read the letter of respondent McNulty dated November 2, 1979 addressed to Justice Meade. The court does not read that communication as a rejection of the designation as conservator. To the extent that it may be argued that it signified a reluctance to assume those duties, it is inconsistent with the bond which the court is satisfied should control. To this end it is also observed that Mr. McNulty is an attorney and he has not suggested that he was unaware or did not appreciate the significance of the language contained in the undertaking he procured and filed with the court for its approval.